ALLIED INVESTMENT CREDIT CORPORATION, PLAINTIFF, *v.*
STARDUST LOUNGE, INC., ET., DEFENDANTS.

Common Pleas Court, Stark County.

No. 104170.   Decided June 7, 1963.

*Mr. Eugene Andrews, Mr. Ben Dreyer* and *Mr. Alan D. Greenberg,* for plaintiff.
*Mr. Richard O. Kuhn* and *Mr. Robert B. Werren,* for receiver.

WEBER, J.   On December 11, 1961, plaintiff filed its petition based upon two cognovit promissory notes, and on said date recovered a judgment against the defendant Stardust Lounge, Inc., et al., for $4886.00 which included interest to date.

On February 5, 1962, plaintiff filed its motion for the ap-

pointment of a receiver for defendant Stardust Lounge, Inc., and on February 13, 1962, this court appointed Richard O. Kuhn as receiver and Robert B. Werren as attorney for receiver.

On August 7, 1962, a journal entry was signed by this court and filed, which recited:

"This matter coming on for hearing on the report of the Receiver as to the offers he has received for the assets of the Stardust Lounge, Inc., including the D5 permit and the Court finds that the defendant has made numerous efforts to obtain a purchaser and has advertised said assets for a period of thirty (30) days and finds that Philip P. Audi has made the best offer for the purchase of said assets, said offer being in the sum of Eleven Thousand Six Hundred Dollars ($11,-600.00)

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Richard O. Kuhn, Receiver of Stardust Lounge, Inc., shall convey to Philip P. Audi all the assets of the Stardust Lounge, Inc., including the D5 liquor permit of said premises, subject to the approval of the Department of Liquor Control of the State of Ohio."

On January 16, 1963, plaintiff filed its motion requesting distribution and recited therein its two chattel mortgages (hereinafter referred to).

On April 18, 1963, the receiver filed his report setting forth the claims of all creditors and the priority of each, and prayed for an order approving the same. In it the receiver allowed only part of plaintiff's claim as secured and the balance as unsecured.

On April 30, 1963, plaintiff filed its objections to the receiver's report and among other objections it claimed it was entitled to priority in the full amount of its judgment by reason of its mortgages.

The cause was assigned for hearing and upon the evidence the Court finds as follows:

That on November 14, 1960, to secure one of the above notes, the defendant company duly executed a chattel mortgage to the plaintiff (and recorded) on all of its chattels, fixtures and equipment in its place of business enumerating the items including a "D-5 Liquor License Permit No. D-5, 239703." and further recited:

"* * * including any transfer or substitution rights to permits issued to mortgagor by Ohio Department of Liquor Control. The mortgagor further agrees that in the event the property herein described is sold at public or private sale in accordance with the provisions hereof, the mortgagor will execute and deliver to the mortgagee all documents and paper writings necessary to transfer or substitute the said permits into the name of the purchaser at said sale."

That on March 14, 1961, to secure the other of the above notes, the defendant company duly executed another chattel mortgage to the plaintiff (and recorded) identical in description and wording as above described in the first mortgage except that the license was described as—"1—Ohio Department of Liquor Control Liquor Permit No. D-5—239703."

The only assets of the business were those covered by the said mortgages of plaintiff and the liquor permit.

The receiver and the plaintiff each had two witnesses testify, under objections by the plaintiff based upon his claim set forth below, as to the market value of the physical assets set forth in said mortgages. One witness for the plaintiff testified that bar and back bar were purchased new by him in 1947. All four witnesses testified to the value of the assets in bulk and one of them as to individual items.

The Court finds from the evidence that the market value of said assets covered by said mortgages at the time of the sale, excluding the liquor permit, to be $2183.00.

The receiver claims that from the sale price aforesaid, the plaintiff is entitled to priority under its mortgages only to the extent of the reasonable value of the chattels, fixtures and equipment, but excluding the liquor permit, set forth in the two mortgages, and as to any balance of its judgment it is an unsecured creditor. The plaintiff claims it is entitled to priority in the fund from the sale to the full amount of its judgment.

### The Law

Does plaintiff, by reason of its mortgages, have a lien or priority in the fund arising from the receiver's sale to the full amount of its judgment?

In *Abraham* v. *Fioramonte*, 165 Ohio St., 213, Syl. 5, reads:

"Permits issued by the Department of Liquor Control of Ohio pursuant to the statutes of Ohio, commonly referred to as

the Liquor Control Act, are personal licenses and are not property which can be mortgaged or seized under execution or court order for the satisfaction of debt."

And at page 225, et seq., the court says:

"We come now to the question whether the debt secured by the mortgage could be satisfied to any extent by levy upon or sale of any liquor permits at any time held by Fioramonte or by Jessie Wallace. This immediately raises the question whether in Ohio a permit to sell intoxicating liquors is merely a personal license or is property in the usual concept of that term."

"Section 6064-17, General Code (now Section 4303.29, Revised Code), contains among others, the following provision:

" '* * * No holder of a permit shall sell, assign, transfer, or pledge the permit granted, without the written consent of the Department of Liquor Control.'

"Section 6064-25, General Code (now Section 4301.25 [c], Revised Code), specifically authorizes the Board of Liquor Control to suspend or revoke any permit for any one of a number of specified reasons including:

" '3. For assigning, transferring or pledging a permit contrary to the rules and regulations of the Board of Liquor Control adopted pursuant to this act.'

"As previously stated by this court in the case of *State, ex rel. Zugravu* v. *O'Brien*, 130 Ohio St., 23, 196 N. E., 664:

" 'Permits to carry on the liquor business which are issued under the provisions of the Liquor Control Act are mere licenses, revocable as therein provided, and create no contract or property right.'

"It is our conclusion that permits to engage in the business of selling intoxicating liquors in Ohio are not property such as can be validly covered by a mortgage, * * *"

In addition to the above statutes in Section 4301.26, Revised Code, which says:

"The board of liquor control shall cancel permits issued pursuant to Chapters 4301 and 4303, Revised Code:

"(B) In the event of—the appointment of a receiver of the property of such holder, except as otherwise provided in the rules and regulations of the department of liquor control relative to the transfer of permits."

Section 4301.03 (F), Revised Code, gives the Board of Liquor Control the power to adopt "rules and regulations restricting and placing conditions upon the transfer of permits," and Regulation No. 14, par. 5, of board says as to transfers:

"In the case of a receiver having been appointed for a permit holder, to such receiver, and thereafter from such receiver to a person—, at the same location, when such transfer is in connection with the bona fide sale of the business and assets of such permit holder."

To start with, it must be kept in mind that plaintiff's mortgages did not cover "the business" of the mortgagor but only the chattel property therein. The receiver did not have to transfer (sell) the permit. It is true that a permit cannot be transferred or "sold" without being in connection with *the sale of the business,* but it is common knowledge in Ohio that, as proved in the instant case, that it is the right of the purchaser to the permit that greatly enhances the sale price of the *business.* It is fallacious, however, to say the right to the permit increases the physical value of the chattels. Hence all of the creditors are entitled to share in this enhanced value of the business. Plaintiff cannot claim a right indirectly which it cannot claim directly.

This Court therefore holds, that under the two decisions of the Supreme Court above quoted, the plaintiff's two mortgages as to being a lien on the liquor permit were null and void and gave plaintiff no lien either legal or equitable on the value of the permit nor any priority in the fund arising from the sale of the business except to the extent of the market value of the chattels enumerated in its mortgages, to-wit, $2183.00. As to the balance of its judgment, it is an unsecured creditor.