The **PARAMOUNT FINANCE COM-
PANY**, Plaintiff,

v.

**S & C TAVERN, INC., et al., Defendants.**

No. C64–450.

United States District Court
N. D. Ohio, E. D.
Sept. 22, 1965.

Philip Kasdan, Cleveland, Ohio, for plaintiff.

No attorney of record for defendant S & C Tavern, Inc.

John J. Fuerst, Cleveland, Ohio, Zolman Cavitch, George Durkin, Grossman, Familo, Cavitch & Kempf, Cleveland, Ohio, for defendant Alvina M. Caputo.

Merle M. McCurdy, U. S. Dist. Atty., James L. Oakar, Robert J. Rotatori, Asst. U. S. Attys., for defendant U. S. of America and defendant Merle M. McCurdy, U. S. Attorney.

David L. Kessler, Larry G. Braker, Asst. Attys. Gen., Columbus, Ohio, for defendant State of Ohio, Department of Liquor Control.

Robert A. Williams, Cleveland, Ohio, for defendants Max Engel and Sidney Ornstein.

CONNELL, Chief Judge.

On April 23, 1964 the Internal Revenue Service assessed a tax deficiency in the amount of $4988.03 against S & C Tavern, Inc. A lien for this amount was filed for record in the Cuyahoga County Recorder's Office on May 18, 1964. On April 27, 1964 the Government had seized the business of that tavern, including the furniture, fixtures, contents of the cash register and purported to seize the "right, title and interest of S & C Tavern, Inc. in the liquor permit" under which the tavern operated. After notice of sale and due adjournment of sale, the District Director supervised the sale of the taxpayer's interest in the tavern for $11,000. The application for the transfer of the liquor permit to the purchaser was processed by the state of Ohio on the condition that the delinquent sales taxes be paid by the taxpayer. The time involved in obtaining the transfer necessitated a renewal of the license which involved a thousand dollar fee and an additional one hundred dollar penalty for a late application. Necessary commitments for sales taxes and renewal of the license and the penalty for the late application were made by the Internal Revenue Service under written agreement with the purchaser and the taxpayer and have been treated as a necessary expense of the sale. Accordingly, subsequent distribution of the fund produced by the sale was made by the Internal Revenue with recognition given first to the expenses of sale, to-wit: Ohio Sales Tax deficiencies, the liquor permit renewal fee, the penalty for late application for renewal, rental payment to the landlord while the tavern was under seizure, and advertising expenses for the sale. These expenses totaled $7,411.60, leaving a net of $3,588.40 from the proceeds to be applied to the tax liabilities.

On June 16, 1964 Paramount Finance Company, which held a recorded mortgage [1] on the business of S & C Tavern,

---

1. The plaintiff had a chattel mortgage on all the fixtures and furniture of the tavern, which the Government admits to be valid; however, the Government contends that under the circumstances existing at the time of the sale, the equipment was valueless. Therefore, although that part of the plaintiff's security agreement which affixes a lien to the physical assets of the tavern is admittedly valid and senior to the lien of the Government, the Government contends that it does not require that the mortgagee participate in the distribution of the fund. Because of the decision which we reach on the main issue in the case, it is unnecessary to answer this argument.

The plaintiff's agreement with the taxpayer also attempted to reserve the right of satisfaction against "any and all rights and/or equities accruing to them [owners of the tavern] by reason of the issuance of permits to them by the Ohio Department of Liquor Control, * * *." The

Inc., filed a lawsuit in the Court of Common Pleas of Cuyahoga County, Ohio, to foreclose its mortgage, naming the United States of America as a party defendant. Shortly thereafter the Government exercised its right of removal under Title 28 U.S.C. § 1444. The case is submitted for consideration on stipulated facts; the sole issue before the Court is whether the United States Government is entitled to the net proceeds of the sale to satisfy its tax lien or whether the plaintiff mortgage holder is entitled to those proceeds to satisfy its lien rights. The Government bases its claim on 26 U.S.C. § 6321, which reads:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

It is admitted that the Government properly recorded its tax lien on May 18, 1964; therefore, if the plaintiff's mortgage does not attach to that which was sold, the Government will be entitled to priority in the distribution of the proceeds. The taxpayer claims that its lien rights are in the protected class of rights described in 26 U.S.C. § 6323(a), which reads:

> (a) Invalidity of Lien Without Notice.

> Except as otherwise provided in subsections (c) and (d), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate * * *

It is the Government's position that the only item of value involved in the sale of the S & C Tavern was the liquor permit, which, under Ohio law, cannot be subjected to attachment, levy or mortgage. Thus, in so far as the plaintiff's security agreement attempts to create any right against the interest of the S & C Tavern, Inc., to its liquor permit, the mortgage is nugatory. Consequently, with regard to the fund created by the sale of the permit, the plaintiff is an unsecured creditor whose rights are junior to the right of the Government to enforce its recorded tax lien. We may safely summarize the Government's argument as follows: The liquor license is "property" subject to execution for tax deficiencies, but it is not "property" to which an otherwise valid mortgage may attach; the Government may seize and sell a liquor permit but a private citizen who holds a mortgage on the tavern's business may not; and the Government may levy on the sale of the proceeds of a liquor license but the mortgage holder may not.

The first question for disposition is whether the taxpayer had a sufficient property interest in the liquor license to which a federal tax lien could attach. In determining whether and to what extent a taxpayer has property or rights to property to which such a lien may attach, both federal and state courts must look to state law. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960). As stated by the Supreme Court in Aquilino:

> It has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * * sought to be reached by the statute.' * * * Section 3670 [the predecessor of § 6321] 'creates no property rights but mere-

---

final clause of the mortgage agreement secured a lien against "the goodwill, tradename and all other property of every kind and nature owned and/or controlled by the grantor, in connection with the operation of said business or co-mingled with or substituted for any property herein described * * *."

ly attaches consequences, federally defined, to rights created under state law.'

While the statutes of Ohio have been silent as to the nature of the right, if any, which a liquor licensee has in his permit, the Supreme Court of Ohio has been most explicit. In Abraham v. Fioramonte, 158 Ohio St. 213, 107 N.E.2d 321, 33 A.L.R.2d 1267 (1952) the court stated, in syllabus 5:

> Permits issued by the Department of Liquor Control of Ohio pursuant to the statutes of Ohio, commonly referred to as the Liquor Control Act, are personal licenses and are not property which can be mortgaged or seized under execution or court order for the satisfaction of debt.

Thus the liquor permit is but a personal privilege to participate in the monopoly which the state of Ohio has secured over wholesale and retail liquor traffic within its boundaries. Since the grant of the privilege is conditioned upon the suitability of the location for the use of the license and, more importantly, the character and responsibility of the person to whom the license is granted, the state requires that no other person or persons participate in the control of that license, and the maintenance of those premises. It was to effectuate this desired policy that the Supreme Court of Ohio declared that a license may not be the subject of any type of execution or levy to satisfy any debt. The license is a personal privilege which the state has placed out of the reach of the licensee's creditors. Therefore the federal government may not force the transfer or sale of a liquor license nor may a creditor who holds a purported mortgage on a licensee's right to a liquor permit.

Even in the event of insolvency or any other condition which makes the continued operation of the licensed premises impractical, the statutes of Ohio provide that the permit may be placed in safekeeping with the Department of Liquor Control until such time as the original permit premises are again available for occupancy or until new premises are se-

cured by the permit holder. Ohio Rev. Code, § 4303.272. Thus it is not absolutely necessary, in the event of insolvency, that the permit holder surrender his permit in the sale of his interest in the realty and personalty of the premises. However, since the period of safekeeping is so limited by statute that additional financing would be difficult to secure within its duration, the licensee generally includes, in the sale of his business, the right to seek a transfer of his license to the purchaser. Accordingly, in the case before us, the S & C Tavern, Inc. consented to apply for a transfer to the person who purchased its business. How then shall we treat the proceeds?

We are urged to adopt a common-sense view with regard to the sale of this business and the transfer of this license. The Government contends that the license is the only item of value in the establishment, that the fixtures, furniture, goodwill and other assets of the business are valueless without the license, and that the proceeds of the sale reflect the value of the license (to which the plaintiff's lien cannot attach) rather than the business (which would be covered by the plaintiff's security agreement). We think the converse is true. We think that whatever value was created in the license arose from the circumstance of its transfer in connection with the sale of a continuing business, which was a necessary condition to its transfer, so that the proceeds of the sale reflect the transfer of the business of the debtor-taxpayer, and are subject to the lien created by plaintiff's security agreement. This becomes abundantly clear after an examination of the licensing and transfer provisions of the Ohio Department of Liquor Control.

The Department of Liquor Control is clothed with a wide discretion in determining whether or not a permit shall issue to an applicant. The exercise of that discretion is controlled by two prime considerations: the availability of premises suitable to the type of operation which the applicant has planned and the assurance that the individual

or individuals to whom the license will issue are of such responsible character so that no danger to the public order arises by reason of their participation in the retail liquor business. Because of the need for suitable premises, Article 12 of the regulations of the Department of Liquor Control requires that:

No Class C or D permit, except on a renewal, shall be issued by the Department until a complete examination, including an inspection of the premises, has been * * * conducted under the direction of the Permit Division * * * and the Department finds that the respective applicants and proposed locations meet all requirements imposed by law and regulation. * * * In determining whether to grant or refuse a permit, the Department shall consider environmental factors including the number and location of permit premises in the immediate area. If the Department shall find no substantial prejudice to public decency, sobriety and good order will result; it may issue the permit. For purposes of this Regulation, however, the Department shall presume, in the absence of affirmative evidence to the contrary, that the renewal of permits and the transfer of permits to successors in interest at the same locations will not prejudice the maintenance of public decency, sobriety and good order.

It is interesting to note that a proposed transfer is presumably proper if the transferee intends to operate at the same location as the transferor and to use the same facilities as the transferor.

The transfer of the S & C Tavern license was conducted pursuant to Regulation 14, which provides, in pertinent part, for transfer:

From the holder thereof to another person, firm, or corporation, at the same location, when such transfer is in connection with the bona fide sale of the business and assets of such permit holder.

Regulation 14 outlines seven situations in which a license may be transferred to another person or firm, and all seven sections require that the proposed transfer be in connection with the sale of the entire business of the permit holder.

Upon written application therefor on forms prescribed and furnished by the Department and upon approval thereof by the Director of Liquor Control, permits may be transferred—

1. From one location to another.

2. From the holder thereof to another person, firm, or corporation, at the same location, when such transfer is in connection with the bona fide sale of the business and assets of such permit holder.

3. In case of the death of a permit holder, to his executor or administrator to his legatee or heirs-at-law, to any person, firm or corporation at the same location, provided however, that in the case of a transfer to a person, firm or corporation such transfer must be in connection with the bona fide sale of the business and assets of such deceased permit holder.

4. In the case of a bankrupt permit holder to his trustee in bankruptcy, and thereafter from such trustee to a person, firm or corporation, at the same location, when such transfer is in connection with the bona fide sale of the business and assets of such bankrupt permit holder.

5. In the case of a receiver having been appointed for a permit holder, to such receiver and thereafter from such receiver to a person, firm or corporation, at the same location, when such transfer is in connection with the bona fide sale of the business and assets of such permit holder.

6. In the case of a guardian having been appointed for a permit holder, to such guardian and thereafter from such guardian to a per-

son, firm or corporation, at the same location, when such transfer is in connection with the bona fide sale of the business and assets of such permit holder.

7. From a permit holder who has an assignment for the benefit of his creditors, to his assignee and thereafter from such assignee to a person, firm or corporation, at the same location, when such transfer is in connection with the bona fide sale of the business and assets of such permit holder.

8. From one member to another of an immediate family, at the same location.

No application for the transfer of a permit may be filed with the Department subsequent to the fifteenth (15th) day preceding the expiration of such permit, unless there has been filed with the Department, prior to the time of tendering such application for transfer, an application for the renewal of such permit.

From this we conclude that whatever value the license may have had was due to the circumstance of its proposed transfer in connection with the sale of the taxpayer's business. The liquor permit cannot be severed from the business where it is used. The license itself, standing alone, is but a worthless piece of paper. The proceeds of the sale, therefore, reflect the market value of the tavern's business, which is covered by the last clause of the plaintiff's security agreement.

To support its argument that the liquor permit is "property" within the purview of § 6321, and subject to federal tax liens, the Government has cited Boss Co., Inc. v. Board of Commissioners, 40 N.J. 379, 192 A.2d 584, 63–2 U.S.T.C. 89,703 (1963). The New Jersey Supreme Court, in determining the issue in favor of the government, was confronted

with a state statute which precluded the attachment of any lien against the liquor license. Although acknowledging that—

[a] liquor license in New Jersey vests a personal right in the licensee to conduct a business otherwise illegal [and] as such, it is merely a temporary permit or privilege. * *

the Court held, nevertheless, that—

the liquor license is a legal interest in the nature of an economic asset, created and protected by statute, and because it has monetary value and is transferable, either by consent of the licensee or by operation of law * * *, it possesses the qualities of property.

Thus, despite the clear language of Rev. Stat. 33:1–26, N.J.S.A., the Court held that the United States had a lien on the liquor license, and permitted the Government to satisfy that lien out of the proceeds of the sale of the license.

We have already indicated that, under the regulations adopted by the Ohio Department of Liquor Control, a liquor license itself has no value because it is not severable from the premises where its privileges are exercised and because it may not be transferred to another person unless the transferee is also the purchaser of the permit holder's business. Regardless of the system of transfer utilized by the New Jersey liquor authorities, we are unable to accord any weight to this decision in so far as it holds that the liquor license by itself vests any property rights in the permit holder which may be considered "property" within the meaning of § 6321. The monetary value of a liquor permit in Ohio arises only through the sale of the permit holder's business and his right of occupancy to the approved premises.

Therefore, we hold that the fund created by the sale of the S & C Tavern is subject to that clause of the plaintiff's security agreement which includes "the business" of the grantor,[2] and the rights

---

2. Nor are we dissuaded from this view by Allied Investment Credit Corp. v. Star Dust Lounge, Inc., 91 Ohio L.Abs. 596,

192 N.E.2d 801 (Ohio Com.Pl.1963). In that case the plaintiff mortgagee had a duly executed chattel mortgage on all of

of the plaintiff are senior to those of the Government.

In summary, and for the reasons stated above, the Court adopts the following conclusions of law:

■ 1. A liquor permit issued by the Ohio Department of Liquor Control is a mere license to participate in the monopoly which the State of Ohio has properly secured over the wholesale and retail liquor business within the state of Ohio. The license vests no property rights in the licensee, and the license is not property within the purview of 26 U.S.C. § 6321.

■ 2. A properly recorded lien in favor of the United States Government for delinquent taxes affords the Government no right against the permit holder's interest in the license issued by the Ohio Department of Liquor Control.

■ 3. The United States Government may not seize a liquor license in an attempt to satisfy a tax lien.

■ 4. The United States Government may not force the transfer of a liquor license from the permit holder to a third party.

5. The fund produced by the sale of the S & C Tavern and the transfer of its liquor license represents the value of the business of the S & C Tavern, and as such is covered by the final clause of the plaintiff's security agreement with the S & C Tavern, Inc.

6. In the distribution of the proceeds of the sale of the S & C Tavern, recognition shall be given first to the expenses of the sale: Ohio Sales Tax deficiencies, the liquor permit renewal fee, the penalty for late application for renewal, rental payment to the landlord while the tavern was under seizure, and advertising expenses for the sale. The remainder of the fund shall be applied to the satisfaction of the plaintiff's rights under its security agreement with S & C Tavern, Inc.

---

the "chattels, fixtures and equipment in its place of business * * * including a 'D–5 liquor license permit' * * * including any transfer or substitution rights to permits issued to mortgagor by the Ohio Department of Liquor Control." The court held that the mortgagee was entitled to no priority, by reason of its purported mortgage on the liquor permits, in the proceeds of the sale of the Star Dust Lounge;

the court gave recognition only to the mortgagee's lien against the chattels and fixtures. However, as the court points out—"To start with, it must be kept in mind that plaintiff's mortgages did not cover "the business' of the mortgagor but only the chattel property therein." Consequently, it is obvious that this case can have no persuasive effect upon our deliberations in the instant case.