OPINION
{¶ 1} Plaintiffs-appellants, Banc of America Strategic Solutions, Inc. and Beal Bank, SSB, appeal from an order of the Franklin County Court of Common Pleas granting a motion by appellee Martin Management Services, Inc., (the "corporate receiver") to amend the order of appointment under which Martin Management serves as receiver in proceedings governing the dissolution of defendant Cooker Restaurant Corporation ("Cooker").
 {¶ 2} The principal issue in this appeal is whether Banc of America has a valid security interest in 16 state of Ohio liquor permits issued to Cooker. Pursuant to a security agreement executed on October 1, 2002, Cooker granted Banc of America a security interest in certain enumerated assets of the restaurant. The collateral specially named in the security agreement included equipment, fixtures, and "general intangibles." This last category is defined in the agreement to include:
A. Types of Collateral:
i. Equipment.
ii. Fixtures.
iii. General Intangibles. Any and all of Debtor's [Cooker's] general intangible property, whether now owned or hereafter, acquired by Debtor or used in Debtor's business currently or hereafter, including, without limitation, all patents, trademarks, trademark licenses, service marks, trade secrets, copyrights and exclusive licenses (whether issued or pending) literary rights, software and all documents, applications, materials and other matters related thereto, all inventions, all manufacturing, engineering and production plans, drawings, specifications, processes and systems, all trade names, goodwill and all chattel paper, documents and instruments relating to such general intangibles. General Intangibles shall not include cash and accounts, unless they constitute proceeds.
(October 1, 2002 Security Agreement, Plaintiffs' Exhibit C.) The security agreement contains a choice of law clause providing that it shall be construed in accordance with the laws of the state of Tennessee.
 {¶ 3} Banc of America filed a complaint in the Franklin County Court of Common Pleas in 2004 seeking foreclosure of real estate and collateral secured under the security agreement. The court in that case duly appointed a receiver (a different entity from the corporate receiver in the case before us, and hereinafter to be referred to as the "bank receiver") to oversee real property and other collateral located in Ohio, including Cooker's Ohio liquor permits.
 {¶ 4} Shortly thereafter, a complaint for dissolution of Cooker was filed also in the Franklin County Court of Common Pleas, and Martin Management was appointed receiver in that matter, with authorization to liquidate remaining Cooker assets and satisfy unsecured creditor's claims. Martin Management then filed a motion claiming that Banc of America did not have a secured interest in Cooker's liquor permits because Ohio law does not permit collateralization of such permits. The motion asked the trial court to amend the prior order appointing the bank receiver to omit reference to and authority over the liquor permits, and placing such authority with Martin Management as receiver for the general dissolution of Cooker and satisfaction of other creditors.
 {¶ 5} The trial court initially determined that Ohio law, despite the choice-of-law provision in the security agreement, would govern any determination of whether an Ohio liquor permit may be collateralized. The trial court then held that, pursuant to the Supreme Court of Ohio's holding in Abraham v. Fioramonte
(1952), 158 Ohio St. 213, and later cases, no security interest could attach to Ohio liquor permits. The court accordingly modified the bank receiver's order of appointment and terminated his authority over Cooker's Ohio liquor permits.
 {¶ 6} Banc of America has timely appealed and brings the following assignment of error: The trial court erred in granting the Motion of Defendant-Appellee Martin Management Services, Inc., Receiver, to Amend the Order of Appointment of the receiver in this action.
 {¶ 7} The Supreme Court of Ohio, in Fioramonte,
specifically stated at paragraph five of the syllabus as follows:
Permits issued by the Department of Liquor Control of Ohio pursuant to the statutes of Ohio, commonly referred to as the Liquor Control Act, are personal licenses and are not property which can be mortgaged or seized under execution or court order for the satisfaction of debt.
 {¶ 8} That holding was followed on the specific question of whether security interests can be taken in a liquor permit by the Ninth District Court of Appeals in Adams v. Whitfield (Sept. 7, 1983), Lorain App. No. C.A. 3422:
The trial court was in error, however, by finding that the Adamses could levy upon the Whitfields' liquor permits. These prmits [sic] are considered personal licenses and not property which can be mortgaged or seized under execution or court order for the satisfaction of debts. Abraham v. Fioramonte (1952),158 Ohio St. 213. Therefore, the Whitfields' liquor permits cannot be treated as property subject to a creditor's security interest.
 {¶ 9} This court has more recently applied the general rule of Fioramonte, that is, that liquor permits are a regulated authorization issued by the state, rather than property in which the permittee has rights, in Continental Sawmill LimitedPartnership v. Italian Oven L.L.C. (Sept. 29, 2000), Franklin App. No. 00AP-204:
In the instant action, the trial court concluded that appellant had no interest in the liquor permit because he had not obtained permission from the Division of Liquor Control for transfer of the permit. In reaching that conclusion, and denying the motion to intervene on the basis that appellant had no interest to protect, the trial court did not abuse its discretion.
Liquor permits are subject to strict regulation by the Ohio Division of Liquor Control. Under Ohio law, "[n]o holder of a permit shall sell, assign, transfer, or pledge such permit, without the written consent of the department." R.C. 4303.29(A). Ohio Adm. Code 4301:1-1-14 provides the method for transfer of a liquor license:
Because of this strict regulation, liquor permits issued under the provisions of the Liquor Control Act are mere licenses, revocable as therein provided, and create no contract or property right. State ex rel. Zugravu v. O'Brien (1935),130 Ohio St. 23, 27; see Abraham v. Fioramonte (1952), 158 Ohio St. 213, paragraph five of the syllabus. Under the administrative scheme for issuance of liquor permits, "the transfer of an existing permit from one place to another or from one person to another requires the approval of the department and is not dependant alone on the willingness or desire of the holder of the permit."Bd. of Liquor Control v. Tsantles (1952), 156 Ohio St. 512,515. Consequently, Ohio courts will not enforce the transfer or assignment of a liquor permit outside the statutory scheme. See,e.g., Allied Investment Credit Corp. v. Stardust Lounge, Inc.
(1963), 91 Ohio Law Abs. 596 (because a liquor permit is a license and not property, plaintiff who was granted a lien on a liquor permit had neither legal nor equitable interests in the permit) * * *.
 {¶ 10} While Continental Sawmill does not involve a security interest, but rather an unauthorized permit sale or permit transfer, the principle is the same. The transfer of any interest, including a security interest, in an existing permit requires the approval of the department of liquor control, and no chose in action, property right, or enforceable obligation is created in the transferee by such an unauthorized or unapproved transfer. Continental Sawmill therefore represents continued adherence by this court to the principle set forth Fioramonte.
 {¶ 11} Appellants argue that Fioramonte and its progeny are no longer good law for two reasons: first, that recently enacted amendments to Article 9 of the UCC, governing secured transactions, have superceded the prior line of cases, and second, that federal case law specifically establishes that a liquor license may represent a property right in Ohio. With respect to the federal case cited, Paramount Fin. Co. v. UnitedStates (C.A.6, 1967), 379 F.2d 543, we acknowledge that the court therein stated explicitedly that a security interest would attach to an Ohio liquor permit:
The [owner] could not transfer to the lender title to the liquor license issued to it by the Ohio Department of Liquor Control, * * * but the [owner] could, and did, transfer to the lender a security interest in the liquor license, as constituting "property" with unique value.
(Id. at 544-545; citation omitted.)
 {¶ 12} We can only observe that the federal court, while attempting to state Ohio law, was nonetheless at variance therewith. We are bound to follow the precedent set by the Supreme Court of Ohio and our own prior decisions, and the federal case cited is insufficient to overcome that precedent.
 {¶ 13} Banc of America further argues that Article 9 of the UCC, and particularly recent amendments thereto as adopted by Ohio, explicitedly preclude any obstacle to security interest in property such as the liquor permits at issue here. R.C. 1309.408, codifying UCC Article 9-408, provides in pertinent part as follows:
(C) A rule of law, statute, or regulation that prohibits, restricts, or requires the consent of a government, governmental body or official, person obligated on a promissory note, or account debtor to the assignment or transfer of, or creation of a security interest in, a promissory note, health-care-insurance receivable, or general intangible, including a contract, permit, license, or franchise between an account debtor and a debtor, is not effective to the extent that the rule of law, statute, or regulation:
(1) Would impair the creation, attachment, or perfection of a security interest; or
(2) Provides that the assignment or transfer or the creation, attachment, or perfection of the security interest may give rise to a default, breach, right of recoupment, claim, defense, termination, right of termination, or remedy under the promissory note, health-care-insurance receivable, or general intangible.
 {¶ 14} We will concede, arguendo, that the bare language of the statute could conceivably be read to encompass liquor permits or other government-issued licenses, although no case on point has been brought to our attention. More instructive, however, is official comment 3 to UCC 9-408, which directly addresses the question before us, that is, whether a liquor permittee has a property interest in the license granted him by the state:
Nature of Debtor's Interest. Neither this section nor any other provision of this Article determines whether a debtor has a property interest. The definition of the term "security interest" provides that it is an "interest in personal property." See Section I-201(37). Ordinarily, a debtor can create a security interest in collateral only if it has "rights in the collateral." See Section 9-203(b). Other law determines whether a debtor has a property interest ("rights in the collateral") and the nature of that interest.
Even in its latest amended form, therefore, R.C. 1309.408 still defers to other governing Ohio law for a determination of whether a property right in the claimed collateral exists, andFioramonte and its progeny still dictate that the permittee has no such property right. We accordingly find that revised Article 9 of the UCC does not alter the Supreme Court of Ohio's long-standing determination that an Ohio liquor permit may not be subjected to a security interest. Our holding is consistent with law from at least one other state that has examined the interaction between UCC 9-408 and state liquor law prohibiting security interests in licenses: see In re Chris-Don (D.N.J. 2005), 367 F. Supp.2d 696, a case precisely on all fours with the one before us and reaching the same conclusion.
 {¶ 15} Finally, we turn to appellants' contention that appellee, as the receiver in the Cooker dissolution action, has no standing to pursue the present proceedings in Banc of America's foreclosure action. This contention is based on an assertion that a receiver has the right to only marshal, manage, dispose of "property," and that, if liquor permits are not property, the corporate receiver has no authority or standing to pursue a remedy in regards to them. These arguments on standing point out the paradoxical position of this case; if the receiver's powers are so limited, the process becomes circular: having proved that liquor permits are not "property" and thus not subject to a security interest, the corporate receiver would lose its authority to manage and dispose of these assets.
 {¶ 16} The definition of "property" in respect of the powers of a receiver is not necessarily identical to the one we have examined in this decision; moreover, the extent to which the corporate receiver will exercise authority over the management and disposition of the Ohio liquor permits has not been determined in a judgment appealed to this court. All that has been held in the trial court order appealed from is that Banc of America may not claim a security interest in the permits, a holding that we affirm. We find that the Ohio liquor permits, at the very least, represented accessories or attributes of the other property and assets of the corporation and thus essential elements in the corporate receiver's dissolution of the business, such that the corporate receiver has standing before the court to seek a remedy affecting the preservation or management of the permits. We accordingly find that the corporate receiver had sufficient standing to bring the present motion in the trial court. The subsequent conduct of the winding up of the assets of Cooker, including disposition of the liquor permits, if objected to, would be the subject of a later appeal.
 {¶ 17} In accordance with the foregoing, we find that appellants' assignment of error is without merit and is overruled. The order of the Franklin County Court of Common Pleas finding that Cooker Restaurant's Ohio liquor permits may not be subject to a security interest is affirmed.
Judgment affirmed.
Brown and McGrath, JJ., concur.
Deshler, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.