[No. 34652. Department One. December 26, 1958.]

ORAL T. ARNDT, *Appellant,* v. AUDREE M. MANVILLE, *as Executrix of the Estate of* FRANK JAMES MANVILLE, *Deceased, et al., Respondents.*[1]

[1]Reported in 333 P. (2d) 667.

*Jonathan F. Whetzel,* for appellant.

*Montgomery, Montgomery & Purdue, Alan F. Austin, Casey & Pruzan, John F. Kovarik, Jerry T. Haggarty, C. M. McCune* and *John A. Godfrey,* for respondents.

OTT, J.—June 24, 1952, Oral T. Arndt entered into a conditional sale contract with F. J. Manville for the sale of his tavern business, inventory, and fixtures. August 11, 1953, Manville sold his interest in the Arndt contract to Morgan G. Pindall and Amy E. Gates. May 21, 1954, they sold their interest in the contract to Robert Chambers and Richard L. Todd. Chambers and Todd made one payment on the contract in June and defaulted thereafter. At the time of the default, a balance of $6,129.09 was due on the Arndt contract.

August 21, 1954, Arndt, a seaman, left for the Orient and did not return until November. While Arndt was overseas, Chambers and Todd ceased operating the tavern. Pindall and Gates secured from Chambers and Todd a transfer of their liquor license, signed in blank, and attempted to sell the tavern business. Upon his return from the Orient in November, Arndt became apprised of the situation, and obtained from Pindall and Gates the keys to the premises, and the Chambers-Todd liquor license transfer. Arndt listed the tavern business for sale with a realtor.

February 1, 1955, Arndt entered into an earnest-money and escrow agreement with Chester Blaze to sell the tavern business for the sum of seventy-five hundred dollars. Arndt executed an affidavit of creditors and a bill of sale,

as owner of the business. He gave Blaze a key to the leased premises and permission to begin redecorating the tavern. Manville, Pindall and Gates, and Chambers and Todd had no notice of the Blaze transaction.

February 2, 1955, Arndt had a document prepared, which was entitled "RELINQUISHMENT OF CONDITIONAL SALE CONTRACT." The revelant portion is as follows:

"That the Second Party [Richard Todd and Robert Chambers] has been unable to keep the terms of said contract and wishes to be absolved from all liability thereunder, and the first party [Arndt] is willing to so absolve him on his admitting default and forfeiture and relinquishing all rights under the contract and in the property;

"Now THEREFORE, in consideration of the mutual agreements herein, the first party does hereby release the second party from all further liability under said contract and the second party admits that said contract has been abandoned and all rights thereunder forfeited, and does hereby acknowledge that said contract is at an end and that all rights thereunder have been forfeited."

The relinquishment was signed by Arndt, and delivered by him to his real-estate agent, Melius, who was handling the Blaze sale. Thereafter, Arndt again left for the Orient, and Melius obtained the signatures of Chambers and Todd on the relinquishment, and deposited it in escrow in the Blaze transaction.

Arndt's sale to Blaze was not consummated by his agent, Melius, because the liquor control board refused to issue a liquor license. Upon his return from the Orient, Arndt attempted to obtain a liquor license in his own name, but was unsuccessful.

In September, 1955, Arndt demanded the balance due on the contract from Manville, Pindall and Gates, and Chambers and Todd, and requested that they remove the personal property from the leased premises. They disclaimed any interest in the personal property, and denied liability under the contract. Arndt later removed the personal property from the premises, sold part, and retained the rest.

October 18, 1956, Arndt commenced this suit against Manville, Pindall and Gates, and Chambers and Todd, and alleged two alternative causes of action to recover (1) the balance due under the contract, plus interest, and (2) damages, as provided by the contract, for the impairment in value of the property sold to the defendants.

The defendants' answer denied liability because of the written release and Arndt's election to repossess the property.

At the conclusion of plaintiff's case, the court granted a motion to dismiss the causes.

From the judgment of dismissal, Arndt has appealed.

■ The appellant assigns as error the trial court's finding that the "RELINQUISHMENT OF CONDITIONAL SALE CONTRACT" was delivered unconditionally to respondents Chambers and Todd, and that a valid consideration supported the release.

The release was signed by Arndt before the signatures of Chambers and Todd were secured. While Arndt was in the Orient, Melius obtained the signatures of Chambers and Todd on the release, as agent for Arndt. Melius was not called as a witness. There was no evidence that the release was offered to or accepted by Arndt, Chambers or Todd conditionally. There was a failure of proof of any condition precedent.

■ The quoted covenant in the relinquishment is clear and unambiguous. It unqualifiedly releases the respondents Chambers and Todd from all liability under the contract. An unconditional release of a party principally liable under the terms of a contract, also releases all parties secondarily liable, unless liability of the others is expressly reserved by the instrument releasing the one. See *Johnson v. Stewart*, 1 Wn. (2d) 439, 96 P. (2d) 473 (1939).

■■ Appellant next contends that the relinquishment was without legal consideration. With this contention, we do not agree. The consideration for the release may be either a benefit to one party or a detriment to the other. It need not be both. *Mowbray Pearson Co. v. E. H. Stanton Co.*, 109 Wash. 601, 187 Pac. 370, 190 Pac. 330 (1920).

Chambers and Todd were under no legal duty to sign the release voluntarily. Their act, in executing the release, removed the cloud on the title to the tavern business, and was valuable consideration flowing to Arndt.

Further, appellant elected to repossess the tavern business. His own evidence established that he (1) obtained the keys to the premises, (2) hired an agent to assist him in selling the property, (3) executed an earnest-money agreement, a conditional sale contract, an affidavit of creditors as owner of the property, and a bill of sale covering the repossessed property, (4) allowed a prospective purchaser to enter and remodel the premises, (5) secured a mutual release from the last assignees of the previous sale contract, (6) was a party to the negotiation of a new lease of the premises to the purchaser, and (7) applied for a liquor license in his own name with the intent of operating the business himself.

In *Rose v. Rundall*, 86 Wash. 422, 425, 150 Pac. 614 (1915), we said:

". . . As to sales of personal property conditionally, it has been uniformly held in this state that in such matters the seller has a choice of remedies. He may either disaffirm the contract and retake the chattel, or he may treat the transaction as an absolute sale and sue on the contract for the purchase price. But since these remedies are inconsistent, he cannot do both. The assertion of one is an abandonment of the other. [Citing cases.]"

The acts of appellant in repossessing the personal property sold constituted an election of remedies and a disaffirmance of the contract.

Appellant based his second cause of action upon the following proviso in the contract:

"In case default is made . . . forfeited payments shall be in full satisfaction of all claims against the purchaser arising out of this contract, provided the purchaser shall forthwith peaceably deliver up possession of *all goods and chattels* to the seller in good order and conditions (reasonable use and wear thereof excepted). But in case said property shall be seriously injured or impaired in value, . . . then the seller shall be entitled . . .

to recover full compensation for such injury or impairment, . . . " (Italics ours.)

In the instant case, there was no evidence of any damage to "goods and chattels." There was evidence that Chambers and Todd forfeited the liquor license. The liquor license issued to them did not constitute "goods and chattels." A liquor license is not property, but a personal privilege. RCW 66.24.010. (see Rule 6, Washington state liquor control board revised rules and regulations, effective March 5, 1956); 30 Am. Jur. 602, § 117. The liquor license, being a privilege, was not "goods and chattels," within the purview of the above proviso.

The judgment is affirmed.

HILL, C. J., MALLERY, FINLEY, and HUNTER, JJ., concur.

