## STATE, BY ROBERT W. MATTSON, ATTORNEY GENERAL, v. ROBERT A. SAUGEN AND OTHERS. ACE'S LOUNGE, INC., APPELLANT.

169 N. W. (2d) 37.

May 23, 1969—No. 41333.

*Lindquist & Vennum, William C. Mortensen, Richard E. Weth-erall,* and *Kenneth F. Kirwin,* for appellant.

*Douglas M. Head,* Attorney General, *Norman R. Carpenter,* Deputy Attorney General, and *Charles R. Hall,* Special Assistant Attorney General, for respondent.

SHERAN, JUSTICE.

Appeal from a judgment of the district court.

On September 30, 1966, the State of Minnesota took by eminent domain appellant's property at 1329 South Third Street, Minneapolis, upon which appellant had been operating a liquor lounge. Commissioners appointed by the district court awarded appellant $39,500. On appeal to the district court from the award, the facts were stipulated by the parties as follows:

"* * * [A]bsent the taking by the state in these proceedings, there is no evidence that the condemnee could not have continued to operate its lounge at the premises in question."

"* * * [T]he value, according to the State's theory of recovery, namely, that the State is acquiring simply the land, buildings and fixtures, at 1329 South Third Street, * * * is in the amount of the commissioners' award; namely, $39,500.00.

"* * * [I]n addition * * *, the value of the business operated at those premises is * * * $17,500.00. So that the total stipulated value according to the owner's theory of recovery, namely, that the State is acquiring land, building, fixtures and business * * * is $57,000.00."

The stipulation also provided that appellant had attempted to transfer the going-concern value of its liquor business to another location. It applied three times but was unsuccessful in transferring the license to another location "because of the restricted liquor patrol limits and the other peculiarities of the Minneapolis licensing situation."

The trial court ruled for the state, holding that "neither the liquor license nor the business or goodwill of the respondent constitutes property acquired by the State of Minnesota."

The issue to be decided by us is whether the going-concern value of

a liquor lounge, operating under a valid city liquor license, is property taken, destroyed, or damaged by the state's condemnation of the premises for which compensation should be given.

This question involves three considerations: (1) Whether the going-concern value is property; (2) whether such property was *taken, destroyed,* or *damaged*; and (3) whether it was taken, destroyed, or damaged *by the condemnation.*

Minn. Const. art. 1, § 13, provides: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minn. St. 117.02, subd. 2, provides: "The word 'taking' and all words and phrases of like import include every interference, under the right of eminent domain, with the ownership, possession, enjoyment, or value of private property." Similarly, the Fourteenth Amendment of the United States Constitution in § 1 provides: "* * * [N]or shall any state deprive any person of life, liberty, or property without due process of law, * * *." The Fourteenth Amendment provides the same standard[1] as the Fifth Amendment, which provides: "* * * [N]or shall private property be taken for public use without just compensation."

■ *Going-concern value under a liquor license is property.*

The intangible character of going-concern value does not preclude compensation for its taking. In Kimball Laundry Co. v. United States, 338 U. S. 1, 10, 69 S. Ct. 1434, 1440, 93 L. ed. 1765, 1774, 7 A. L. R. (2d) 1280, the United States Supreme Court held that compensation for going-concern value was required, saying:

"* * * [T]he question arises whether the intangible character of such [going-concern] value alone precludes compensation for it. The answer is not far to seek. The value of all property, as we have already observed, is dependent upon and inseparable from individual needs and attitudes, and these, obviously, are intangible."

The state argues that a liquor license is not a property right but, instead, a privilege. It bases its argument on the fact that "[n]o citizen

---

[1] United States ex rel. T.V.A. v. Powelson, 319 U. S. 266, 279, 63 S. Ct. 1047, 1054, 87 L. ed. 1390, 1399.

has an inherent or vested right to sell intoxicating liquors." [2] Sabes v. City of Minneapolis, 265 Minn. 166, 171, 120 N. W. (2d) 871, 875. Appellant recognizes that liquor selling is a "privilege," but contends that this means no more than that it is subject to the control of the licensing authority, and that as to the licensing authority, one has no "right" to a license. Appellant further contends, however, that a liquor license does constitute a property right as to third parties.

In Lane v. Hewgley (Tex. Civ. App.) 155 S. W. 348, 350, the court stated:

"* * * It has been said that 'as between the state [licensor] and the licensee no such right does exist.' [Citation omitted.] But it does not follow that as to all the balance of the world the licensee has not a property right in the license. * * *

"* * * This license or permission the citizen can hold and exercise against all the world but the state which conferred it. Such a right can hardly be said to be without value as a property interest." [3]

Courts do differ as to whether a liquor license is a privilege [4] or property [5] vis-a-vis third parties.

"* * * This difference of opinion as to the legal nature of a liquor

---

[2] See, also, Crowley v. Christensen, 137 U. S. 86, 91, 11 S. Ct. 13, 15, 34 L. ed. 620, 624; Arens v. Village of Rogers, 240 Minn. 386, 61 N. W. (2d) 508, appeal dismissed, 347 U. S. 949, 74 S. Ct. 680, 98 L. ed. 1096; 9 McQuillin, Municipal Corporations (3 ed.) § 26.195.

[3] Accord, Deitsch v. Board of Liquor License Commrs. 58-1 U. S. Tax Cases par. 9496, 1 AFTR (2d) 1680; Nelson v. Naranjo, 74 N. Mex. 502, 395 P. (2d) 228.

[4] See, e. g., Paramount Finance Co. v. S & C Tavern, Inc. (N. D. Ohio) 245 F. Supp. 766 (Federal tax lien); Abraham v. Fioramonte, 158 Ohio St. 213, 107 N. E. (2d) 321, 33 A. L. R. (2d) 1267 (levy and execution); Arndt v. Manville, 53 Wash. (2d) 305, 333 P. (2d) 667 (such rights not included in goods and chattels).

[5] See, e. g., Golden v. State, 133 Cal. App. (2d) 640, 285 P. (2d) 49 (Federal tax lien); The Boss Co. Inc. v. Board of Commrs. 40 N. J. 379, 192 A. (2d) 584 (Federal tax lien); Nelson v. Naranjo, supra (levy and execution); Rowe v. Colpoys, 78 App. D. C. 75, 137 F. (2d) 249, 148 A. L. R. 488 (levy and execution.)

license is apparently due to the fact, not always recognized by the courts, that such license, while a mere privilege as far as the relation between the government and the licensee is concerned, nevertheless constitutes a definite economic asset of monetary value for its owner. * * * It is submitted that wherever the legislature has made licenses assignable or transferable, and the transfer can be effected with the consent of the authorities to anyone qualifying under the statute, the property element in the license is sufficiently recognized to warrant its exposure to seizure by the creditors of the licensee." [6] Annotation, 148 A. L. R. 492.

Appellant operated a liquor establishment under the authority of a valid and unrevoked license issued by the city of Minneapolis. The license was specifically related to a particular location or premises. Minneapolis Code of Ordinances, § 851.440. The number of licenses which can be issued is limited. § 851.030. Upon the licensee's death, the decedent's personal representative might operate under the license by filing his appointment and a bond. § 851.450. The license was transferable to another person with the consent of the city council. § 851.300. Revocation of an issued license would be in order only upon a violation of ordinances and laws relative to such license, and then only "for cause after notice to the licensee and hearing." § 851.330. Thus, appellant's license was assignable and transferable and as such can be construed as a property right rather than a privilege.

Compensation has been awarded for condemnation of rights very similar to those which exist under liquor licenses. In Jackson v. United States, 122 Ct. Cl. 197, 103 F. Supp. 1019, plaintiff's decedent had possessed, since 1941, a license from the State of Maryland to conduct commercial fishing operations in certain areas of Chesapeake Bay. Under the Maryland statute the license was effective for one year but, barring misconduct, could be renewed. The license, like the liquor license in the present case, was capable of being transferred to other

---

[6] Nelson v. Naranjo, *supra* (license assignable and transferable); Rowe v. Colpoys, *supra* (license assignable and transferable); The Boss Co. Inc. v. Board of Commrs. *supra* (license assignable and transferable).

parties, or to the licensee's estate upon his death. In 1943, the government redefined certain restricted military proving-ground areas to include decedent's fishing grounds, and notified him that he would no longer be permitted to fish there. The court noted that he was unable to secure a license to fish elsewhere since all other locations had been appropriated by other fishermen, and held that the fishing right constituted a property right for which compensation in excess of $11,000 was required. The court reasoned (122 Ct. Cl. 206, 103 F. Supp. 1020):

"In a sense, what the plaintiff had before he was forbidden to fish was a property right. It had value, in that he made his living from it. * * *

"We think, therefore, that the plaintiff had a sort of property right in his fishing ground, and that the Government took that property from him." [7]

United States v. Smoot Sand & Gravel Corp. (4 Cir.) 248 F. (2d) 822, involved rights granted by state statute to riparian landowners to remove sand and gravel from tideland waters owned by the state. In holding that compensation for such rights was required upon condemnation of the landowner's land, the court said (248 F. [2d] 827):

"* * * It cannot be disputed that when one is assigned the right, pending its revocation, to use or consume something to the exclusion of all others, and to receive compensation from anyone who ventures to exercise the privilege without his authority, he has a species of property, regardless of what theory of property we may adopt. * * * Whether the right with which the owner is endowed by this statute is called a revocable though unrevoked 'license,' or a 'profit a prendre,' is immaterial. The label does not matter; the substance cannot be taken away by the United States even for a public use without the owner being made whole."

Thus, though the right vested in the owners is created through a revo-

---

[7] Accord, Todd v. United States, 155 Ct. Cl. 87, 292 F. (2d) 841; Blake v. United States (E. D. Va.) 181 F. Supp. 584.

cable license, so long as the right exists it cannot be taken away without just compensation.

The trial court placed considerable reliance upon Arens v. Village of Rogers, 240 Minn. 386, 61 N. W. (2d) 508, appeal dismissed, 347 U. S. 949, 74 S. Ct. 680, 98 L. ed. 1096. In that case the court held that the refusal to renew the village vendors' licenses (after they had expired) so that an exclusive municipal store could be established was a valid exercise of the police power. The court also upheld the village's refusal to reimburse the vendors for their tangible personal property used in the establishment. This court in that case did hold that a license is a privilege and not a right (240 Minn. 401, 61 N. W. [2d] 518):

"* * * [I]t is very doubtful whether liquor licensees *whose licenses have lapsed* at the time of the establishment of the municipal liquor store are deprived of any property without due process of law, for, as this court has frequently stated, no person has a vested property right to engage in or continue to engage in the liquor business. George Benz Sons, Inc. v. Ericson, 227 Minn. 1, 10, 34 N. W. (2d) 725, 730; Paron v. City of Shakopee, 226 Minn. 222, 32 N. W. (2d) 603, 2 A. L. R. (2d) 1227." (Italics supplied.)

The court held that there was no obligation, legal or moral, to compensate. In connection with the moral obligation, the court said (240 Minn. 406, 61 N. W. [2d] 521):

"* * * Although strong and compelling reasons can be advanced for finding a moral obligation to reimburse the ordinary businessman for losses sustained as a result of governmental action, such reasons do not apply with equal weight to a trade as tenuous as the retail hard liquor business in this state. How can there be a moral obligation to compensate a business traditionally unfavored by society which is commenced merely at the will of the sovereign and subject to its discretion and control throughout the whole of its existence? It is inconceivable to say that any moral obligation would be owed a private liquor licensee whose license was not renewed upon its normal expiration."

Note that Arens stands only for the proposition that the license is

a privilege as to the licensor, not vis-a-vis third parties.[8] That case is distinguishable further from the situation before us. In Arens, the license had expired. Here, it had not. Arens in no way involved the exercise of eminent domain power, but rather presented a straight failure-to-renew situation, involving only the question of whether the licensing authority's actions were proper.

While it is true that liquor businesses are appropriately subject to more scrutiny and control than most businesses when the government is acting pursuant to its police power, they have the same rights as any other businesses when the government is not acting pursuant to such police power, but rather in the exercise of eminent domain.

■ *Going-concern value was destroyed.*

Appellant had a business, the value of which included a going-concern value of $17,500. This business was tied to a precise location, in that appellant's license, while transferable between persons (Minneapolis Code of Ordinances, § 851.300), related specifically to the particular premises designated therein. § 851.440. Appellant tried unsuccessfully three times to transfer the license to a new location. The parties stipulated that "the property was subsequently demolished and that the owner's license expired inasmuch as he had been unsuccessful in transferring the license to another location and has subsequently gone out of the liquor business by virtue of that fact." It is clear that appellant was deprived of the substantial value of his going concern.

■ *Appellant's going-concern value was destroyed by the condemnation.*

A "taking" requires that the condemnee be deprived of his property and that such deprivation be caused by the condemnation. It was stipulated that "absent the taking by the state in these proceedings, there is no evidence that the condemnee could not have continued to operate its lounge at the premises in question."

Appellant accepts the general rule that loss of going-concern value

---

[8] Plaintiffs in Paron and Benz were both seeking renewal of licenses from licensing authorities.

is not recoverable on condemnation.[9] In our opinion, an exception to the general rule applies in the situation where, as here, the condemnee's business is one which cannot be pursued without a license (Minneapolis Code of Ordinances, § 851.010), and where that license, while transferable between persons (§ 851.300), must relate specifically to particular premises which are designated in the license itself. § 851.440. It is immaterial whether or not appellant proves he cannot get his license transferred to some other location if and when he acquires such other location. Appellant has made three applications, all of which have been refused.

In Canada it has been held that condemnees are entitled to reasonable compensation for the value of their liquor businesses in addition to the value of the physical assets.[10] "[T]he principles applied to the assessment of compensation in United States eminent domain cases closely resemble the principles applied in Canada and Quebec." Challies, The Law of Expropriation, p. 12 (1954). In Assaf v. City of Toronto [1953] Ont. R. 595, 604, 4 Dom. L. R. 466, 472, the court stated:

"* * * Whether the burden of proof if inability to get his licences transferred is on the appellant, or whether the burden is on the respondent to prove the opposite proposition, namely, that the appellant could obtain a transfer of his licences to some other location, the fact remains that by reason of this expropriation the appellant is left in the position where the premises which he had and with which he enjoyed a liquor licence are taken from him, with the licence coming to an end in relation to those premises when the respondent takes possession. By the award the appellant is left to take the risk of being able to get a licence elsewhere by transfer or otherwise without any compensation for the loss he may suffer. What was taken from him was property to which was attached a licence. * * *

---

[9] See, e. g., United States v. General Motors Corp. 323 U. S. 373, 65 S. Ct. 357, 89 L. ed. 311, 156 A. L. R. 390; Mitchell v. United States, 267 U. S. 341, 45 S. Ct. 293, 69 L. ed. 644; 2 Nichols, Eminent Domain (3 ed.) § 5.76.

[10] In re Cavanagh [1907] 14 Ont. L. R. 523; Rex v. Rogers [1907] 11 Ex. Can. R. 132; Assaf v. City of Toronto [1953] Ont. R. 595, 4 Dom. L. R. 466.

"What may happen if the applicant endeavours to establish himself elsewhere is so speculative that I think the proper way to determine the amount of compensation in this case is to approach it on the basis of what the appellant, as a prudent man at the time of the expropriation of his property, would have paid for it rather than be ejected from it."

Other courts have carved out exceptions to the general rule and have begun to include incidental damages in determining appropriate awards. This occurs where the government takes over a public utility and intends to permanently furnish the prior services,[11] or where the taking by the condemnor is temporary.[12]

Compensation under eminent domain for loss of going-concern value was required in Kimball Laundry Co. v. United States, *supra*. In that case the United States temporarily condemned for Army use a laundry plant for a term which could be extended from year to year at the election of the Secretary of War. Following the general rule of non-compensability, the district court awarded the owner an annual rental value and damages to plant and machinery beyond ordinary wear and tear, but no compensation was given for the loss of going-concern value due to the destruction of his customer trade routes. The United States Supreme Court (five to four) reversed, holding the condemnee was entitled to the value of the trade routes. Distinguishing cases involving "the usual taking of fee title to business property" when "the going-concern value has not been taken," in that "only the physical property has been condemned, *leaving the owner free to move his business to a new location*," the court held that "*an exercise of the power of eminent domain which has the inevitable effect of depriving the owner of the going-concern value of his business* is a compensable 'taking' of property." (Italics supplied.) 338 U. S. 11, 13, 69 S. Ct.

[11] See, e. g., 2 Nichols, Eminent Domain (3 ed.) § 5.76; Omaha v. Omaha Water Co. 218 U. S. 180, 30 S. Ct. 615, 54 L. ed. 991, 48 L. R. A. (N.S.) 1084.

[12] See, e. g., Kimball Laundry Co. v. United States, 338 U. S. 1, 69 S. Ct. 1434, 93 L. ed. 1765, 7 A. L. R. (2d) 1280; Eyherabide v. United States, 170 Ct. Cl. 598, 345 F. (2d) 565.

1440, 1441, 93 L. ed. 1775, 1776. Appellant argues that the present case is like the taking in Kimball because the taking had the inevitable effect of depriving appellant of its business' going-concern value.

The trial court sought to distinguish Kimball on the grounds that the case involved a temporary taking, quoting as follows:

"It is arguable, to be sure, that since an equally suitable plant might conceivably have been available to the petitioner at reasonable terms for the same period as the Government's occupancy of its own plant, and since that would have enabled it to stay in business without loss of going-concern value, it is irrelevant that no such premises happened to be available, as it would have been irrelevant, under a strict application of Mitchell v. United States, 267 U. S. 341, had the Government taken the fee. When fee title to business property has been taken, however, it is fair on the whole that the amount of compensation payable should not include speculative losses consequent upon realization of the remote possibility that the owner will be unable to find a wholly suitable location for the transfer of going-concern value. *But when the Government has taken the temporary use of such property, it would be unfair to deny compensation for a demonstrable loss of going-concern value upon the assumption that an even more remote possibility—the temporary transfer of going-concern value—might have been realized.*" (Italics supplied.) 338 U. S. 14, 69 S. Ct. 1442, 93 L. ed. 1777.

Here the amount of loss is not "speculative," but has been stipulated. And the occurrence of the loss is not a "remote possibility" but an accomplished fact, and, at the time of the condemnation, it was certain that it would occur.

Mitchell v. United States, 267 U. S. 341, 45 S. Ct. 293, 69 L. ed. 644, does not require us to reach a different result. It has been argued that, notwithstanding the court's failure to say so expressly, Mitchell was "substantially overruled sub silentio" by Kimball.[13] But it is not

---

[13] Comment, 18 U. of Chi. L. Rev. 349, 353, 354. Cf. 92 U. of Pa. L. Rev. 453, 455 (no justification for distinguishing temporary and permanent takings).

necessary for us to consider whether Mitchell was completely over-ruled, because it is distinguishable from the present case and no portion of Mitchell's rationale which would favor the state in the present case survived Kimball.

In Mitchell, the Federal government condemned land for a military proving ground. In so doing, plaintiff's lands, which were especially adapted to growing corn of a special grade and quality, were taken and he was unable to find another location. The United States Supreme Court upheld the refusal to pay for the business, saying (267 U. S. 344, 45 S. Ct. 294, 69 L. ed. 648):

"The special value of land due to its adaptability for use in a particular business is an element which the owner of land is entitled, under the Fifth Amendment, to have considered in determining the amount to be paid as the just compensation upon a taking by eminent domain. [Citations omitted.] Doubtless such special value of the plaintiffs' land was duly considered by the President in fixing the amount to be paid therefor. * * * There is no finding as a fact that the Government took the business, or that what it did was intended as a taking. If the business was destroyed, the destruction was an unintended incident of the taking of land."

In Mitchell, the court reasoned that the going-concern value was not "taken" because the condemnor only needed, and only received, the physical property. This approach construes "taking" as if it were "taking over." [14] But note that in Kimball, the court said the "situation is otherwise" when the condemnor intends to carry on the business; however, the court also required compensation for the condemnee's laundry routes which the government never carried on or intended to carry on. The court held (338 U. S. 13, 69 S. Ct. 1441, 93 L. ed. 1776):

---

[14] In Minnesota, "taking" does not mean "taking over." Minn. Const. art. 1, § 13, covers not only "taking," but also destruction or damage, and Minn. St. 117.02, subd. 2, requires that "taking" and all similar terms be construed to include "every interference, under the right of eminent domain, with the ownership, possession, enjoyment, or value of private property."

"* * * If such a deprivation has occurred, the going-concern value of the business is at the Government's disposal whether or not it chooses to avail itself of it. * * * '[T]he question is what has the owner lost, not what has the taker gained.' "

The Mitchell court presumed that the value of the business was reflected in the value placed upon the land. However, in the present case the state's counsel admitted before the trial court:

"* * * The fact situation and arguments of law were presented to the commissioners at that time, with the understanding of the State of Minnesota that the commissioners did not consider the value of the business in reaching their award * * *."

The Mitchell condemnee's assumed inability to relocate was not caused by law or regulation, but merely by peculiar factual circumstances. In the present case, law renders it impossible for appellant to reestablish the business elsewhere in the city [15] or in the state.[16]

Jackson v. United States, *supra*; Todd v. United States, 155 Ct. Cl. 87, 292 F. (2d) 841; and United States v. Smoot Sand & Gravel Corp. *supra*, holding that a condemnee may recover for the loss of fishing or sand and gravel rights held under authority of and subject to revocation by the state, also aid us in concluding that appellant must be compensated. Renewability as of right for a definite term is not a requirement for property to be entitled to compensation. In Smoot, the condemnee's interest was plainly recognized to be revocable at the state's pleasure, and the fishing license in Jackson was renewable barring misconduct.

Appellant's property was destroyed by the state, not the Minneapolis City Council. The state unequivocally stipulated that "absent the taking by the state in these proceedings, there is no evidence that the condemnee could not have continued to operate its lounge at the premises in question."

A majority of the commentators agree that denying recovery for

---

[15] Minneapolis Code of Ordinances, § 851.010.
[16] Minn. St. 340.11.

loss of going-concern value is inequitable.[17] One commentator has even recommended that—

"* * * recompense for these losses should be specifically authorized by the legislature, or should be sanctioned by the courts where the way is open, by the use of the concept, not of 'market value,' but of 'value to the owner.' " McCormick, *The Measure of Compensation in Eminent Domain*, 17 Minn. L. Rev. 461, 482.

The present case is one where the way is open to award appellant compensation for the going-concern value of the business. Here the condemnee was deprived of far more than the value of cold assets. The exercise of the right of eminent domain effectively destroyed appellant's valid and unrevoked ability to continue to engage in the liquor business. The parties stipulated that absent the taking by the state, there was no evidence that appellant could not have continued to operate its lounge at the premises in question and that the appellant has gone out of the liquor business because it was unsuccessful in transferring its license to another location. It was unable to relocate because of the restricted liquor patrol limits and other peculiarities of the Minneapolis licensing situation. There is no problem here with a speculated loss because the going-concern value has been stipulated to be $17,500. Although a liquor license is a privilege vis-a-vis

---

[17] See, e. g., Aloi & Goldberg, *A Reexamination of Value, Good Will, and Business Losses in Eminent Domain*, 53 Cornell L. Rev. 604, 647 (denial "disproportionate taxing of costs" on condemnees; "There never was a valid reason for the no-compensation rule"); McCormick, *The Measure of Compensation in Eminent Domain*, 17 Minn. L. Rev. 461, 482 (recovery supported by "[s]trong reasons of policy and fairness"); Phay, *The Eminent Domain Procedure of North Carolina: The Need for Legislative Action*, 45 N. C. L. Rev. 587, 627 (recovery constitutionally required); Searles & Raphael, *Current Trends in the Law of Condemnation*, 27 Fordham L. Rev. 529, 553 (recovery necessary for adequate compensation); Slavitt, *Inequities and Injustices of Condemnation Acquisitions*, 40 Conn. B. J. 11, 14 (denial unjust and inequitable); Comment, 18 U. of Chi. L. Rev. 349, 355 (denial "subsidy of the community by the individual"); Comment, 67 Yale L. J. 61, 96 (denial "inordinate burden on the individuals whose property is appropriated for the public benefit").

the licensing authorities, it has qualities of a property right as to third parties, and in eminent-domain proceedings we consider the condemnee to have a property right in his liquor license vis-a-vis the condemnor. The going-concern value of appellant's liquor lounge operating under a valid and unrevoked liquor license was a property right which was taken by the condemnor. As such, we hold that the facts of this particular case fall within an exception to the general rule of no compensation for incidental damages and that appellant is entitled to recover for the loss of the going business (stipulated as $17,500) as well as the usual award for the value of the real property taken (stipulated as $39,500).

Judgment is affirmed as to the value of the real property taken and reversed as to the going-concern value.

Affirmed in part; reversed in part.

PETERSON, JUSTICE (dissenting).

It has been well settled until today that the condemnor in the permanent taking of property is not obligated to pay the condemnee for the loss of going-concern value of his business. This general rule has been sustained under U. S. Const. Amends. V and XIV. Mitchell v. United States, 267 U. S. 341, 45 S. Ct. 293, 69 L. ed. 644.[1] Minn. Const. art. 1, § 13, despite prior opportunity to do otherwise, has not been construed differently. See, e. g., Hendrickson v. State, 267 Minn. 436, 127 N. W. (2d) 165. The condemnation statute, Minn. St. 117.02, subd. 2, contemplates no more than what is required by our constitution. Seabloom v. Krier, 219 Minn. 362, 18 N. W. (2d) 88.

The majority opinion does two things, to both of which I respect-

---

[1] Kimball Laundry Co. v. United States, 338 U. S. 1, 69 S. Ct. 1434, 93 L. ed. 1765, 7 A. L. R. (2d) 1280, achieved a different result where the governmental taking was temporary rather than permanent. I do not understand the suggestion that Kimball has overruled Mitchell, for the narrow majority in the Kimball case was achieved only with the concurrence of Mr. Justice Rutledge, who clearly limited his concurrence to the fact of temporary taking and stated his adherence to the general rule where the taking of complete title is permanent. The situation in the instant case, of course, is like Mitchell and unlike Kimball.

fully dissent: (1) Its immediate result is to carve out an exception from the general rule for the benefit of a liquor licensee;[2] and (2) its language seems to forecast judicial extension of statute to award unlimited compensation for the going-concern value in other cases.

The basic premise for the result in this case is that the going-concern value of appellant condemnee's liquor business was destroyed by the act of the state, as condemnor, a premise formulated from the parties' stipulation that "there is no evidence that the condemnee could not have continued to operate its lounge at the premises in question." I disagree with that premise. Appellant's business was destroyed instead by act of the municipality, as licensor, in refusing to consent to its transfer to another location within the patrol limits. As the stipulation states, "the owner's license expired inasmuch as he had been unsuccessful in transferring the license to another location and has subsequently gone out of the liquor business *by virtue of that fact."* (Italics supplied.)

Neither constitutional nor statutory basis exists for establishing the exceptional rule in this case. The general rule concerning the status of a liquor licensee's interest is summarized in 9 McQuillin, Municipal Corporations (3 ed.) § 26.195:

"There is no vested right to *or under* a liquor license. There is at most a privilege, personal in character, which, it has been said, is merely to do what otherwise would be, or could be made, an offense, and which is subject to changing regulations, and even to legislative cancellation. A liquor license or permit creates neither a contract *nor a property right,* and denial of it by a proper authority with discretion in the matter deprives an applicant of neither liberty nor property." (Italics supplied.)

Our own decisions are in harmony with this summary statement:

---

[2] The value of the liquor licensee's business, it may be observed, is not so much the result of individual enterprise, but of his semimonopoly position "because of the restricted liquor patrol limits and other peculiarities of the Minneapolis licensing situation."

Anderson v. City of St. Paul, 226 Minn. 186, 32 N. W. (2d) 538; George Benz Sons, Inc. v. Ericson, 227 Minn. 1, 34 N. W. (2d) 725; Sabes v. City of Minneapolis, 265 Minn. 166, 120 N. W. (2d) 871; Arens v. Village of Rogers, 240 Minn. 386, 61 N. W. (2d) 508, appeal dismissed, 347 U. S. 949, 74 S. Ct. 680, 98 L. ed. 1096.

Whether the state should compensate the owner of a business for the loss of its going-concern value as a result of a taking by eminent domain—either in the circumstances of this case or in any case—is in my view a matter for legislative determination; and, absent compelling constitutional considerations presented by such legislative determination, this court should not substitute its own judgment of what may be the more appropriate result.

I would affirm.

ROGOSHESKE, JUSTICE (dissenting).

I join Mr. Justice Peterson in his dissent and summarize the reasons as I see them for doing so. Even though the stipulated facts may make this case unique and its disposition by the majority arguably justified, I cannot agree that the going-concern value of licensed liquor premises should be compensable, absent legislative authorization because:

■ The going-concern value of a liquor business, especially where the number and location is so rigidly limited as in this case, largely reflects the value of the license itself, rather than the good will built up by efficient operation and the attractiveness of the premises. Although under the system of licensing such appears to be inevitable, I cannot find justification for awarding compensation for the license for which a licensee is under no legal obligation to pay more than the license fee.

■ Despite the stipulation, I find it impossible to accept the conclusion that the inability of appellant to relocate its business and ultimate destruction of the business was legally caused by the taking. The taking merely gave rise to the necessity to relocate, but it was the system and administration of licensing which was the direct and legal cause of the total loss of the going-concern value of the business.