**STATE of Alaska, Appellant,**

v.

**John HAMMER et al., Appellees.**

**KITO'S KAVE, INC., Cross-Appellant,**

v.

**STATE of Alaska, Cross-Appellee.**

**Nos. 2500, 2660.**

Supreme Court of Alaska.

May 24, 1976.

---

Thomas R. Wickwire, Asst. Atty. Gen., Avrum M. Gross, Atty. Gen., Juneau, for appellant and cross-appellee.

L. B. Jacobson of Robertson, Monagle, Eastaugh & Bradley, Anchorage, for appellee and cross-appellants, Kito's Kave.

Michael M. Holmes of Faulkner, Banfield, Doogan & Holmes, Juneau, for appellee, John Hammer.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

BURKE, Justice.

This appeal raises a question of first impression concerning the state's obligation to compensate the owner of a business for damage done to that business by the state's exercise of its powers of eminent domain.

In May, 1973, the State of Alaska filed a complaint under AS 09.55.240, *et seq.*, against certain lands in Petersburg, Alaska, which were in the path of the Petersburg Highway. One of these parcels was owned by appellee Hammer; on it stood a two story building, the first floor of which was leased by appellee Kito's Kave, Inc., a bar business owned by Richard Kito. While Kito knew as of November, 1972, that the property would be condemned at some point in the future, he did not know when he would have to vacate. His first notice of the condemnation proceeding came with the filing of the complaint; when he was forced to vacate on September 29, 1973, he had not been able to secure new premises. He continued to investigate alternative locations, including dry-docking a small ferry boat, and finally constructed a building for the bar, with the help of a substantial Small Business Administration loan. Kito's Kave reopened in July, 1974, nine months after it had closed.

After a master's hearing, the case was tried to a jury.[1] The trial developed into a

1. Referral of eminent domain cases to a master, and a jury trial de novo on appeal from the master, are provided for in AS 09.-55.240, *et seq.*, and in Rule 72, Alaska Rules of Civil Procedure, governing eminent domain procedure.

three-way contest: Hammer and the state contested the value of the property; Hammer and Kito differed over the relative values of the leasehold and the reversionary interest; and Kito and the state disputed the allowance for certain incidental[2] damages. The jury awarded $21,500 to Hammer for his interest. It awarded to Kito $20,000 for the leasehold; $7,500 for bar equipment condemned by the state; a stipulated amount, $444, for depreciation in bar equipment due to relocation, and incidental damages of $5,735 for five months of loss of profits due to business interruption, at a stipulated $1,147 a month.

## A. Temporary Loss of Profits Due to Business Interruption

■ The state has appealed from the trial court's ruling allowing Kito to present evidence on certain items of incidental damage. Since the trial court later excluded from the jury's consideration all of this evidence but that which pertained to loss of profit damages, we consider only that item here. The state has not chosen to contest the jury's finding that five of the nine months interruption of business were directly caused by the state's taking of Kito's leasehold,[3] but instead argues that as a matter of law such damages should not be awarded. We are therefore presented with the question of whether temporary loss of profits due to business interruption directly resulting from a state's taking of the land on which the business operated is a damage to property compensable under our constitution.

■ The traditional view has been that such damages, as part of the category of incidental damages, are not recognized in eminent domain proceedings, being *damnum absque injuria*, a loss which does not give rise to an action for damages.[4] Compensation has been denied under three theories: that damage to personal property need not be compensated for; that the state has taken the land only, and not the business; and that the damages are too speculative to be awarded.[5] The first theory is inapplicable in Alaska, since by statute and case law,[6] personal property is included in the categories of property for which the condemnor must compensate the owner. We do not find either of the other theories sufficiently persuasive to cause us to deny compensation for the damages suffered here.

■ That the state takes only the land, not the business, is an older line of reasoning,[7] reaching its peak in the leading case, *Mitchell v. United States*, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644 (1925). There the federal government took, under

2. At trial these damages were termed "consequential"; we prefer to call them incidental damages, reserving "consequential" damages to describe losses to the remainder of a condemnor's property in instances of partial taking.

3. We find no reason to distinguish between tenants and owners of the real property condemned in this inquiry.

4. 4 Nichols, Eminent Domain § 13.3 (Rev. 3rd Ed. 1974); *Almota Farmers E. & W. Co. v. United States*, 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973); *United States v. General Motors Corp.*, 323 U.S. 373, 379, 65 S.Ct. 357, 89 L.Ed. 311 (1945); *Mitchell v. United States*, 267 U.S. 341, 345, 45 S.Ct. 293, 69 L. Ed. 644 (1925); *City of Oakland v. Pacific Coast Lumber & Mill Co.*, 171 Cal. 392, 153 P. 705 (1915); *Auraria Businessmen Against Confiscation, Inc. v. Denver U. R. A.*, 183 Colo. 441, 517 P.2d 845 (1974); *Luber v.*

*Milwaukee County*, 47 Wis.2d 271, 177 N.W. 2d 380, 384 (1970).

5. 4 Nichols, Eminent Domain § 13.3 (Rev. 3rd Ed. 1974); Sange, "The Unsoundness of California's Non-Compensability Rule as Applied to Business Losses in Condemnation Cases", 20 Hastings L.J. 675 (1969).

6. AS 01.10.060, *State v. Ness*, 516 P.2d 1212 n. 9 (Alaska 1973); *Stroh v. Alaska State Housing Authority*, 459 P.2d 480, 483 (Alaska 1968).

7. *United States v. General Motors Corp.*, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945); *United States v. 25.4 Acres of Land*, 71 F. Supp. 255 (E.D.N.Y.1947); *Application of Westchester County*, 204 Misc. 1031, 127 N.Y. S.2d 24 (Sup.Ct.1953); *Becker v. Philadelphia & R. T. R. Co.*, 177 Pa. 252, 35 A. 617 (1896); *Hunter's Adm'r v. Chesapeake & O. Ry. Co.*, 107 Va. 158, 59 S.E. 415 (1907).

its eminent domain power, a farm, with a cannery operation based on it. The soil of the farm was uniquely suited to growing a certain type of corn, which the cannery processed and sold. Relocation of the farming and cannery business was impossible. That court said:

> No recovery therefor can be had now as for a taking of the business. There is no finding as a fact that the government took the business, or that what it did was intended as a taking. If the business was destroyed, the destruction was an unintended incident of the taking of land.[8]

This approach has several serious flaws. First, it conflicts with our principle of compensation, which, instead of looking at the benefit to the condemnor as a measure of compensation, looks to the loss to the owner, as measured by an objective standard.[9] In this case, for example, Hammer and Kito received compensation for the loss of their interests in the building, not for the state's gain of a roadbed. Secondly, *Mitchell v. United States, supra,* was decided under the fifth amendment to the United States Constitution, which unlike the Alaska Constitution, does not expressly

require compensation for *damage* to property.[10] Finally, the reasoning of *Mitchell* is unacceptable because it fails to provide a realistic measure of what has been taken. The court simply ignored, for the purposes of compensation, the destruction of Mitchell's business, characterizing it as "an unintended incident of the taking". This court would poorly serve the law if it were to so blind itself to the realities of condemnation.[11]

Uncomfortable with the position that the *Mitchell* reasoning left them in, courts shifted their ground and began to deny compensation for incidental damages, particularly loss of profit damages, because the damages were too speculative and uncertain to award.[12] We find this judicial reluctance surprising in light of general willingness to award such damages in other civil actions.

Loss of profits damages have been awarded in a variety of civil contexts, including tort actions (both personal and business), breach of contract actions, antitrust suits, and suits for infringement of a patent or trademark.[13] In any case seeking loss of profits, such damages must be "reasonably certain":[14] the trier of fact

8. 267 U.S. at 345, 45 S.Ct. at 294.

9. *Stewart & Grindle, Inc. v. State,* 524 P.2d 1242 (Alaska 1974); *Kimball Laundry Co. v. United States,* 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765, 7 A.L.R.2d 1280 (1949); *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945); *Community Redevelop. Agcy. of Los Angeles v. Abrams,* 41 Cal.App.3d 608, 116 Cal.Rptr. 308 (1974).

10. The Fifth Amendment to the Constitution of the United States provides in part:
   [N]or shall private property be taken for public use, without just compensation.
   Art. I, Sec. 18 of the Constitution of the State of Alaska provides:
   Private property shall not be taken or damaged for public use without just compensation.

11. *Stewart & Grindle, Inc. v. State,* 524 P.2d 1242, 1247 (Alaska 1974).

12. *See State v. Hesler,* 257 Ind. 307, 274 N.E. 2d 261, 266 (1971); *In Re Ziegler's Petition,*

357 Mich. 20, 97 N.W.2d 748 (1959); *In Re Slum Clearance, City of Detroit,* 332 Mich. 485, 52 N.W.2d 195, 200 (1952); Note, "Eminent Domain Valuations in an Age of Redevelopment: Incidental Losses", 67 Yale L.J. 61 (1957).

13. *See* Prosser, Law of Torts, (4th Ed.) 950 (1971); 2 Harper and James, Law of Torts § 25.3 (1956); 5 Corbin, Contracts, §§ 1020–1023; 25 C.J.S. Damages § 42–44; 2 McCarthy on Trademarks and Unfair Competition 30:27 (1973); 67 Yale L.J. 61, n. 47; *Dowling Supply & Equip., Inc. v. City of Anchorage,* 490 P.2d 907 (Alaska 1971); *Suntrana Mining Company v. Widich,* 360 P. 2d 84 (Alaska 1961).

14. McCormick on Damages 96ff (1935); 2 Harper & James, Law of Torts, § 25.3 (1956); 5 Corbin, Contracts §§ 1020–1023; 25 C.J.S. Damages § 26; 2 McCarthy On Trademarks and Unfair Competition 30:27 (1973); Note, Requirement of Certainty in the Proof of Lost Profits, 69 Harv.L.Rev. 316 (1950).

must be able to determine the amount of lost profits from evidence on the record and reasonable inferences therefrom, not from mere speculation and wishful thinking. Thus, claims which are truly speculative, in that they depend on unrealized contingencies, unproved products, or the like, are screened out by the requirements of reasonable certainty, while damages which can be proven are allowed. It is incongruous that courts allow proof of loss of profits damages in most types of actions, on a case by case basis, and yet in eminent domain cases bar all such claims as inherently speculative. Loss of profits damages are as susceptible of proof in an eminent domain case as in any other; certainly the loss of profits where a business temporarily ceases to operate is easier to determine than the loss of profits due to trademark infringement, where the plaintiff continues to operate, although without an anticipated increase in business. In this case, the monthly amount of profits lost was stipulated to by the parties, eliminating any problem of proof.[15]

Our dissatisfaction with the reasoning used to deny compensation for damages such as loss of profits due to busi-ness interruption is shared by commentators,[16] and by courts,[17] which while feeling compelled by precedent to deny compensation, have commented on the harshness of the result. Other courts, faced with intolerably inequitable results, have simply rejected the traditional views.[18] In *Luber v. Milwaukee County*, 47 Wis. 2d 271, 177 N.W.2d 380 (1970), the Wisconsin Supreme Court held unconstitutional a state statute limiting recovery for rents lost, because of condemnation, to one year, holding that the condemnees had a constitutional right to compensation for all rents lost due to the taking. The court pointed out that over time the use of the fair market value measure of compensation alone had become inadequate:

> The importance of allowing recovery for incidental losses has increased significantly since condemnation powers were initially exercised in this country. During the early use of such power, land was usually undeveloped and takings seldom created incidental losses. Thus the former interpretation of the "just compensation" provision of our constitution seldom resulted in the infliction of incidental losses. The rule allowing fair

---

15. *See also Community Redevelop. Agcy. of Los Angeles v. Abrams*, 41 Cal.App.3d 608, 116 Cal.Rptr. 308, 314 (1974); *Jacksonville Express. Auth. v. Henry G. Du Pree Co.*, 108 So.2d 289 (Fla.1958); *State v. Saugen*, 283 Minn. 402, 169 N.W.2d 37, 46 (1969).

16. Bigham, "'Fair Market Value', 'Just Compensation' and the Constitution: A Critical View", 24 Vand.L.Rev. 63 (1970); Sange, "The Unsoundness of California's Non-Compensability Rule as Applied to Business Losses in Inverse Condemnation Cases", 20 Hastings L.J. 675 (1969); Aloi and Goldberg, "A Reexamination of Value, Goodwill and Business Losses in Eminent Domain", 53 Cornell L. Rev. 604 (1968); Michelman, "Just Compensation", 80 Harv.L.Rev. 1165 (1967); "Comment, Eminent Domain Valuations in an Age of Redevelopment: Incidental Losses", 67 Yale L.J. 61 (1957); Kratovil and Harrison, "Eminent Domain-Policy and Concept", 42 Calif.L.Rev. 596 (1954).

17. *United States v. General Motors Corp.*, 323 U.S. 373, 382, 65 S.Ct. 357, 89 L.Ed. 311 (1945); *General Motors Corp. v. United States*, 140 F.2d 873 (7th Cir. 1944); *City of Oakland v. Pacific Coast Lumber & Mill Co.*, 171 Cal. 392, 153 P. 705 (1915); *Newark v. Cook*, 133 A. 875 (N.J.1926). *See also* 4 Nichols, Eminent Domain § 13.3 (Rev. 3rd Ed. 1974) ("But unquestionably the rule sometimes works great hardships".)

18. Courts have also created exceptions to their rule against incidental damages in cases where the taking is temporary: *Kimball Laundry v. United States*, 338 U.S. 1, 69 S. Ct. 1434, 93 L.Ed. 1765, 7 A.L.R.2d 1280 (1949); *United States v. General Motors Corp.*, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945); or partial: *In Re Ziegler's Petition*, 357 Mich. 20, 97 N.W.2d 748 (Mich. 1959); *In Re Slum Clearance*, 332 Mich. 485, 52 N.W.2d 195 (1952); *see also* 2 Nichols, Eminent Domain § 6.44 (Rev. 3rd Ed. 1974), "Comment: Eminent Domain Valuations in an Age of Redevelopment: Incidental Losses", 67 Yale L.J. 61, 81–2 ("And the logic of the courts in making these exceptions appears incompatible with the arguments they employ to reject incidental losses . . . .")

market value for only the physical property actually taken created no great hardship. In modern society, however, condemnation proceedings are necessitated by numerous needs of society and are initiated by numerous authorized bodies. Due to the fact people are often congregated in given areas and that we have reached a state wherein re-development is necessary, commercial and industrial property is often taken in condemnation proceedings. When such property is taken, incidental damages are very apt to occur and in some cases exceed the fair market value of the actual physical property taken.[19] (footnotes omitted)

The court concluded that "the rule making consequential damages *damnum absque injuria* is, under modern constitutional interpretation, discarded . . . ."[20]

The Supreme Court of Florida, in *Jacksonville Expressway Authority v. Henry G. Du Pree Co.*, 108 So.2d 289 (Fla.1958), also concluded that fair market value of the property taken was not the exclusive measure of compensation:

We feel our constitutional provision for full compensation requires that the courts determine the value of the property by taking into account all facts and circumstances which bear a reasonable relationship to the loss occasioned the owner by virtue of the taking of his property under the right of eminent domain.[21]

The Florida court held that moving expenses and attorney's fees caused by the state's taking must be compensated for.

In *Bowers v. Fulton County*, 221 Ga. 731, 146 So.2d 884 (1966), the Supreme Court of Georgia construed its constitutional provision for just compensation to require compensation for loss of profits due to relocation, loss of profits due to loss of customers, and moving expenses. Minnesota and California also require compensation for some forms of damage to or destruction of a business due to condemnation.[22] We are in sympathy with the approach of these states, although we do not make as sweeping a pronouncement of law.

Having reviewed the cases from other jurisdictions both denying and requiring compensation for incidental damages, we turn to an examination of the relevant Alaska law. Article I, Sec. 18 of the Alaska Constitution provides that "private property shall not be taken or damaged for public use without just compensation". Given this mandate, we are unable to deny temporary loss of profits damages to Kito. His business is "property", and it has been directly damaged by the state in the taking of his leasehold. His damages have been fixed by stipulation. To deny compensation for such damages would contravene the policy behind the constitutional provision, that the condemnee should not pay a higher price for a public improvement than do other members of the public. The constitution does not require Kito to make a special sacrifice for the Petersburg Highway.

We have indicated in other eminent domain cases that the just compensation provision of the Alaska Constitution requires full indemnification of the owner for property taken or damaged.[23] We have also found that the principle of just compensation required payment to a condemnee of necessary appraiser's and attor-

19. 177 N.W.2d at 384–5. [footnotes omitted] The dissenting opinion argues that the majority is reading the Wisconsin constitution to require compensation where property is damaged as well as where it is taken. The Alaska Constitution, expressly provides that damage to property shall be compensated for.

20. *Id.* at 386.

21. 108 So.2d at 291.

22. *See State v. Saugen*, 283 Minn. 402, 169 N.W.2d 37 (1969) ; *Community Redevelop. Agcy. of Los Angeles v. Abrams*, 41 Cal.App. 3d 608, 116 Cal.Rptr. 308 (1974) ; *Klopping v. Whittier*, 8 Cal.3d 39, 104 Cal.Rptr. 1, 500 P.2d 1345 (Cal.1972).

23. *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242 (Alaska 1974) ; *Ketchikan Cold Storage Company v. State*, 491 P.2d 143 (Alaska 1971).

ney's fees, and of interest from the date of taking to the date of payment.[24] It would be both irrational and anomalous to compensate a condemnee for these damages and yet to ignore the often more substantial damage suffered when the condemnee must interrupt its business in order to relocate.[25] We hold, therefore, that the temporary loss of profits during relocation, here incurred because of the state's exercise of its eminent domain power in taking the property on which the business was conducted, is a damaging of property within Article I, Sec. 18 of the Alaska Constitution, and must be compensated for. As we stated in *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242 (Alaska 1974):

> Without such a rule, the State forces a property owner to pay a greater portion of the costs of a public project than any other taxpayer must pay by afflicting him with the unavoidable expenses of condemnation. Placing such a burden on the property owner is no more . . . just than assessing a levy against him but no others. 524 P.2d at page 1250.

The amount of such damages is a matter largely within the state's control; by giving precise and early notice of the date when the property must be vacated it can keep the loss of profits due to necessary business interruption to a minimum. Since such loss of profits is an item of special damages, the condemnee has the burden of proving by a preponderance of the evidence the amount of profits lost as a direct result of the state's taking;[26] such proof must meet the requirement of reasonable certainty as indicated.

## B. Depreciation of Bar Equipment Due to Relocation

The state also appeals from the award of damages for the depreciation in value of Kito's bar equipment due to the relocation.[27] The award of this item of damages (stipulated to be $444) is clearly proper under our decision in *Stroh v. Alaska State Housing Authority*, 459 P.2d 480 (Alaska 1969) and *State v. Ness*, 516 P.2d 1212 (Alaska 1973). In *Stroh v. Alaska State Housing Authority, supra,* the condemnee, who leased the condemned building for use as a hotel, claimed compensation for the depreciation in hotel furnishings which resulted from their removal from the building. This court remanded the matter to the superior court for the taking of evidence on the extent of depreciation, and the superior court awarded damages. In *State v. Ness, supra,* the jury awarded compensation to the condemnee for personal property which had not been taken by the state. This court held that the condemnee could not receive compensation for the *value* of property not taken, but should be compensated for the *damage* to that property resulting from the state's taking of the premises. In footnote 10 of that opinion, we indicated that depreciation in the value of the property, as well as physical damage, should be included in the calculation of compensation. These cases are controlling here; Kito was entitled to the depreciation in the value of the bar equipment resulting from its removal from its original location.

24. *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242 (Alaska 1974); *Russian Orthodox Greek Catholic Church v. Alaska State Housing Authority*, 498 P.2d 737 (Alaska 1972).

25. The legislature, no doubt recognizing the harshness of forcing a condemnee to suffer these damages, has enacted AS 34.60.040, providing for limited relocation payments.

26. *State v. Ness*, 516 P.2d 1212, 1214 n. 11 (Alaska 1973), recognizing the general rule announced in *State v. 45,621 Square Feet of Land [Stewart]*, 475 P.2d 553 (Alaska 1970) that there is no burden of proof in eminent domain cases, but placing such burden on the owner where special damages are at issue.

27. At trial this item of damages was termed "consequential"; however, it is an item of ordinary damages, concerning damage to physical property.

## C. Exclusion of the Small Business Loan From the Jury's Consideration

The third issue in the state's appeal concerns the exclusion from the jury's consideration of evidence that Kito had been able to get a $226,000 loan on favorable terms from the Small Business Administration because his business had been displaced by a federally funded highway project. Testimony indicated that the value of the loan was $27,000. It is the state's contention that this incidental benefit to the business should be offset against the incidental damages awarded to Kito. We have already concluded that the condemnee must be compensated for a limited form of incidental damages—temporary loss of profits due to business interruption caused by the taking. The condemnee is entitled to compensation for these damages, but is not entitled to double compensation. If the state can show a matching incidental benefit to the property incidentally damaged by the taking, that benefit may offset the damages awarded. The benefit must accrue to the precise property interest affected; if, for example, the value of the loan were to be considered a benefit here, it could not be used to offset the damages due for the taking of the leasehold.[28] The loan in fact helped Kito build new premises at a lower cost; his expense in acquiring new premises is not an element of his damage in this proceeding. The loan did not offset the loss of profits Kito suffered from the five-month business interruption chargeable to the state.

## D. Exclusion of Evidence as to Resale Price of Condemned Equipment

The final allegation of error the state makes in its case against Kito concerns the exclusion of evidence regarding the resale of bar equipment condemned by the state. The state, mistakenly, as it admits, condemned ten items of bar equipment. At trial, their value at the time of condemnation was found to be $7,500. Some two months after the taking, the state resold the equipment to Kito for $200, and it sought at trial to have this figure introduced as evidence of the value of the equipment. The measure of value of property taken is the fair market value as of the date of taking,[29] not the value of the property to the state at any time,[30] nor the value at a time after condemnation.[31] Therefore the evidence of the resale was irrelevant to the question of value when produced to show either the state's valuation of the equipment, or Kito's valuation after the equipment had been removed from the bar.[32] The fixing by statute of the date of valuation of property taken or damaged as the date of the issuance of the summons of the eminent domain complaint was intended to prevent the state from taking advantage of the drop in property values which occurs once real property has been condemned, or personal property like the bar fixtures here or the hotel equipment in *Stroh v. Alaska State Housing Authority, supra,* has been removed from the condemned building. Therefore we find that the exclusion of the evidence of resale was proper. As the state itself acknowledges, the proper course would have been to abandon the condemnation of these items, paying Kito only for the period of their "use" by the state.

## E. Attorney's Fees

The state and Kito have each appealed an aspect of the trial court's award of attorney's fees under Rule 72, Alaska Rules of Civil Procedure, which governs

28. AS 09.55.310(3). *See Dash v. State,* 491 P.2d 1069 (Alaska 1971).

29. AS 09.55.330.

30. *Stewart & Grindle, Inc. v. State,* 524 P.2d 1242 (Alaska 1974).

31. *Almota Farmers E. & W. Co. v. United States,* 409 U.S. 470, 478, 93 S.Ct. 791, 796,

35 L.Ed.2d 1, 10 (1973); *United States v. Miller,* 317 U.S. 369, 63 S.Ct. 276, 377, 87 L.Ed. 336 (1943).

32. Furthermore, the record indicates that the resale to Kito was not on the open market or at arm's length, and would not therefore, be a reliable indicator of the value of the property.

procedure in eminent domain matters.[33] The state contends that it was improper to award any attorney's fees to Hammer, since Hammer was unsuccessful at trial. While Hammer might have been unsuccessful in his dispute with Kito over the allocation between fee and leasehold, he was successful in his dispute with the state over the value of the fee. Furthermore, the concept of prevailing party to which the state seems to be referring is not applicable to eminent domain proceedings, where the state almost always "prevails". *Stewart & Grindle, Inc. v. State,* 524 P.2d 1242, 1249, 1251 (Alaska 1974). Instead, Rule 72(k) provides that attorney's fees may be awarded to a condemnee in certain instances when:

> (2) the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken . . .

The state initially deposited $8,000 for Hammer's interest. The master awarded $13,500 for Hammer's fee, and the jury award was $21,500. The increase in the award for Hammer did not accompany a proportionate decrease in the award for Kito. Hammer recovered an award more than 10% higher than the allowance of the master, and therefore an award of attorney's fees was proper under the rule.

■■■ The state argues that it should not be required to pay the attorney's fees resulting from Hammer's and Kito's dispute over relative values of fee and leasehold. It is true that the state has no part in the dispute between owners of different interests in the same property, and should not be charged with the attorney's fees resulting from the portion of the litigation resulting from that dispute. The trial judge, however, took this into account, and discounted the award to Hammer by $1,700 for the time spent on the allocation dispute, awarding him $3,500. On the record before us, we are unable to say that the trial court's division of attorney's fees between the dispute with the state and the dispute with Kito was manifestly unreasonable.[34]

■■■ Kito appeals from the trial court's deduction of $2,000 from the $9,000 award of attorney's fees to him. This deduction compensated the state for Kito's use of its appraiser in his dispute with Hammer. Kito contends that he was forced to use the state's appraiser only because the state abdicated its responsibility to present evidence on the proper allocation between fee and leasehold, and that Kito was forced to do so to protect himself against Hammer. As indicated above, the state does not have the burden of showing the proper allocation of value between condemnees with different interests in the same property. In *Russian Orthodox. Greek Catholic Church v. Alaska State Housing Authority,* 498 P.2d 737 (Alaska 1972), this court held that the state must, where the separate interests are readily recognizable, allocate its deposit with the court between those interests in order to stop the running of an *interest* obligation. This was intended to compensate the condemnees for the loss of the use of their money during the period between deposit and judgment, when they were unable to withdraw their shares; it does not place the burden on the state of proving the extent of the separate interests. Since the state does not have this burden, it has no obligation to produce evidence or to provide Kito with a witness, as

---

33. Rule 72(a), Alaska Rules of Civil Procedure provides:
   *Applicability of Other Rules.* The procedure for the condemnation of property under the power of eminent domain shall be governed by these rules, except as otherwise provided in this rule.
   *See Stewart & Grindle, Inc. v. State,* on petition for rehearing, 524 P.2d 1251 (Alaska 1974); *State v. 1,163 Acres, More or Less, Chuckwm, Inc.,* 449 P.2d 776, 778 (Alaska 1968).

34. *Western Airlines, Inc. v. Lathrop Co.,* 535 P.2d 1209 (Alaska 1975); *Grasle Electric Company v. Clark,* 525 P.2d 1081 (Alaska 1974); *Palfy v. Rice,* 473 P.2d 606 (Alaska 1970).

to the allocation issue. The trial court did not err in charging Kito for the use of the witness.[35]

For the reasons set forth above, the state's appeal and Kito's cross-appeal are denied, and the judgment of the trial court is affirmed.

AFFIRMED.

---

35. We do not pass on the question of whether Kito would be entitled to costs and attorney's fees from Hammer pertaining to the successful litigation of the apportionment issue as that question has not been raised on this appeal.